EZEQUIEL RIVERA,

                Plaintiff,

      v.                                                     Case No. 23-C-1431

NESTLE USA INC.,

                Defendant.

## DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Ezequiel Rivera brought this action against his former employer, Defendant Nestle USA Inc. for national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In particular, Plaintiff asserts claims of a hostile work environment, unlawful pay and promotion practices, retaliation, and unlawful termination. This matter comes before the court on the parties' cross motions for summary judgment. For the following reasons, Plaintiff's motion will be denied, Defendant's motion will be granted, and the case will be dismissed.

## BACKGROUND

Defendant produces frozen pizza brands in its Little Chute, Wisconsin facility. The Little Chute facility relies heavily on an ammonia-based refrigeration system to maintain product quality, safety, and sustainability. In July 2022, Defendant offered Plaintiff, who is Mexican American, a job as a Utilities Technician Trainee on third shift in the Little Chute facility, and Plaintiff's first day of work was August 8, 2022. As a Utilities Technician Trainee, Plaintiff performed limited

maintenance and repair tasks on the ammonia refrigeration system and other infrastructure systems.

On February 25, 2023, Plaintiff worked a shift that started at 5:00 p.m. and ended at 5:00 a.m. During the early hours of February 26, 2023, Plaintiff and other employees were working in the main engine room refilling oil in a number of ammonia compressors. Another employee asked Plaintiff and Michael Hirn to retrieve an oil barrel from the east engine room. While in the east engine room, some sort of physical altercation or fight occurred between Plaintiff and Hirn, a white employee.

When Plaintiff and Hirn returned to the main engine room, they gave conflicting reports of what happened. Plaintiff accused Hirn of pushing him. Hirn denied pushing Plaintiff and asserted that Plaintiff attempted to grab him. There were no security cameras or other witnesses present in the east engine room. Defendant separated Plaintiff and Hirn and obtained written statements from both of them. On February 26, 2023, Plaintiff and Hirn were suspended pending an investigation and escorted out of the facility.

Defendant promptly began investigating the incident. The two written statements from Plaintiff and Hirn told opposite stories that could not be reconciled. Plaintiff's written statement claimed:

> We went to the oil east engine room [Mike] Hirn was yelling at me to help put a barrel on wheel barrel carrier dolly and I told him don't be yelling at me I'm not [your] son we were face to face he pushed me hard and I buckled almost fell. I told him I will be reporting him. He has been racial discriminated me since I started being bias towards me. He yells at me and I feel it's not a big deal our line of work to yell. He is treating me unfair. He has had a bad attitude towards me since I started. This is retaliation for [an] incident where I reported two employees of refrigeration of racial discrimination that he is friends with. He droved [sic] me to fight pushing me.

Dkt. No. 98-1 at 1. Hirn's written statement claimed:

> Zeke [Plaintiff] and I went to get a barrel of oil in the East Engine Room. When we got there I moved the barrel to the edge of the skid to bring to the floor. Zeke pushed the cart up to drop the barrel on it but you can't load it like that. I told him to move the cart and help me get it to the floor. He just grabbed the barrel and pulled it down. He then asked what was so hard about that? Nothing was hard but I said I don't like to bully stuff like that. There were 2 of us to get it off the skid. He thought I was calling him a bully. Nope, just need to be smart about stuff like that. He started yelling at me about how I make jobs harder than it needs to be. He was swearing at me and I said that's the same thing he did the other night. Swearing at me for no reason. He proceeded to take off his jacket and swearing and spitting at me. He tried grabbing me and ended up with my microphone for the radio in his hand. I told him he had no right to treat me like this. He said I better watch out and he had reported me previously. I took the cart and barrel of oil to the main engine room. As soon as we entered the engine room he ran up to Joe and said whatever he said. I don't know. I explained to Joe what happened all the while Zeke was yelling and saying I was a liar. Joe asked if we needed to get a supervisor involved and Zeke said yes as I was going to play the victim. I didn't say anything until I wrote this statement.
>
> The whole time on the way back from getting the oil Zeke was already twisting the story and accusing me of pushing him. I simply told him I never touched him the whole time.

Dkt. No. 98-2 at 1–2. Defendant's Human Resources Department also interviewed Plaintiff and Hirn by telephone. Both Plaintiff and Hirn reported that the other was the aggressor. As a result of the conflicting statements and the lack of any additional witnesses or security footage, Defendant was not able to determine whether one employee was the aggressor and, if so, which one. Defendant did find, however, that both employees were involved in a physical altercation or fight because neither employee walked away or deescalated the situation.

Defendant prohibits fighting in the workplace. Its Disciplinary Guidelines consider fighting a serious misconduct that may result in immediate termination. Defendant concluded that both Plaintiff and Hirn violated the Disciplinary Guidelines. On March 3, 2023, Defendant terminated the employments of both Plaintiff and Hirn for fighting.

3

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The fact that the parties filed cross motions for summary judgment does not alter this standard. In evaluating each party's motion, the court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Wrongful Termination Claim

Plaintiff asserts that he was terminated because of his Mexican American heritage. Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "To establish that an employer discriminated in contravention of Title VII, a plaintiff must show that membership in a protected class 'caused the discharge or other adverse employment action.'" *Nigro v. Ind. Univ. Health Care*

4

*Associates, Inc.*, 40 F.4th 488, 491 (7th Cir. 2022) (citation omitted). In the Seventh Circuit, "plaintiffs can rely on two frameworks to show discrimination." *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023). Under the "holistic approach" established in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), courts look at evidence in the aggregate to determine whether it allows an inference of prohibited discrimination. Under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff has the initial burden to establish a *prima facie* case of discrimination, then the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the employment decision, and finally, the burden shifts back to the plaintiff to establish that such justification was pretextual. Regardless of the method used, the ultimate question is the same: "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765.

In this case, Defendant offers a legitimate nondiscriminatory explanation for its decision to terminate Plaintiff's employment. It contends that it was unable to determine what exactly transpired on February 26, 2023, but was able to conclude that Plaintiff and Hirn violated Defendant's Disciplinary Guidelines by being involved in a physical altercation or fight. As a result, Defendant terminated both Plaintiff and Hirn, employees with two different national origins, for fighting in the workplace.

"[W]here a defendant offers a nondiscriminatory explanation for its employment decision, as here, the prima facie case and pretext inquiries often overlap, so courts may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext." *Vassileva v. City of Chicago*, 118 F.4th 869, 874 (7th Cir. 2024) (internal quotation marks and citation omitted).

"Pretext is defined as 'a dishonest explanation, a lie rather than an oddity or an error.'" *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015) (quoting *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002)).

As evidence of pretext, Plaintiff argues that Defendant conducted a faulty investigation because he was the victim of the altercation and should not have been terminated. "To show pretext, a plaintiff must do more than simply allege that an employer's stated reasons are inaccurate; he must still have some circumstances to support an inference that there was an improper motivation proscribed by law." *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020) (internal quotation marks and citation omitted). Plaintiff may disagree with the result of Defendant's determination and the ultimate decision to terminate his employment, but that is not the issue relevant to this claim. Plaintiff must point to some evidence that Defendant actually fired him because of his national origin. He suspects that Defendant's employees were biased against him, but "speculation is insufficient to defeat a summary judgment motion." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024) (citation omitted). Plaintiff offers no evidence of impermissible motivation for his termination. Accordingly, Plaintiff has failed to demonstrate that he was wrongfully terminated based on his national origin. Defendant is entitled to summary judgment on this claim.

**B. Exhaustion of Administrative Remedies as to Other Claims**

Defendant asserts that, although Plaintiff exhausted his administrative remedies as to his unlawful termination claim, he failed to exhaust his administrative remedies with regard to his claims for retaliation, pay and promotions, and a hostile work environment. Plaintiff argues that these claims are sufficiently related to the allegations contained in his discrimination complaint.
6

"Generally, a plaintiff may not bring claims under Title VII that were not originally included in the charges made to the EEOC." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). "The only qualification to this principle applies to claims that are 'like or reasonably related' to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges." *Id.* "The relevant claim and the EEOC charge must, at a minimum, describe the same conduct and implicate the same individuals." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 831–32 (7th Cir. 2015). In other words, "claims brought in judicial proceedings must be within the scope of the charge filed with the EEOC; '[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination.'" *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). "Where an EEOC charge is based only on an employee's termination, a hostile work environment claim that involves a separate set of incidents over a period of time preceding the termination is not sufficiently related to the EEOC charge." *Radek v. Target Corp.*, No. 16-C-4750, 2017 WL 6733717, at *3 (N.D. Ill. Dec. 19, 2017) (citing *Sitar*, 344 F.3d at 726).

On August 28, 2023, Plaintiff filed a discrimination complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development, which was cross-filed with the EEOC. Plaintiff's discrimination complaint contained the following allegations:

> I reported unfair training to HR. I was [an] ammonia operator and I wasn't being trained properly. I was being left alone when I was required by policy to have someone with me on roof any maintenance activities. I was a Mexican in all white department and they treated me unfair saying I'm not gonna make it. Racial discrimination. Just treated unfair but well paid, so I tried not to complain but on 2/26/23 during night shift I had [an] argument with Mike [Hirn] a maintenance employee in my [department] that was very hostile with me. He would yell a lot hard to work with him. I complained to my supervisor many times but on 2/26/23 we were arguing over [an] oil barrel. He was yelling at me to help him and he shoved me hard from my chest pushed me I almost fell but twisted my knee. I

> reported to Team Lead Joe Schoenfeld, team lead of my [department]. He is friends with Mike [Hirn] so unfair from beginning. He tried to cover it up. He said don't report it let it go. I said no I'm hurt my knee hurts I need medical treatment. I was sent to safety office and gave statement and was escorted out at 2am. I asked why. They said investigation. I went immediately to hospital in Green Bay. They found a torn ACL and meniscus. I was terminated. They claim I instigated the altercation. In other words I was assaulted and Nestle USA failed to protect me and my rights. I want my job back please.

Dkt. No. 99-1 at 4. Plaintiff's retaliation, pay and promotions, and hostile work environment claims are outside the scope of his discrimination complaint. Accordingly, the court grants Defendant's motion for summary judgment as to these claims.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment (Dkt. No. 95) is **GRANTED** and Plaintiff's motion for summary judgment (Dkt. No. 102) is **DENIED**. Defendant's motion for sanctions (Dkt. No. 82) is **DENIED**. This case is dismissed. The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 21st day of February, 2025.

William C. Griesbach
United States District Judge